IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ABBOTT LABORATORIES,<br><br>    Plaintiff,<br><br>    v.<br><br>ROXANE LABORATORIES, INC.,<br><br>    Defendant. | C.A. No. 12-cv-00457-RGA-CJB |

**DEFENDANT'S OPENING BRIEF IN SUPPORT OF**
**<u>MOTION TO DISMISS FOR LACK OF JURISDICTION</u>**

OF COUNSEL:

Kenneth G. Schuler
Marc N. Zubick
LATHAM & WATKINS LLP
233 South Wacker Drive, Suite 5800
Chicago, Illinois 60606
Telephone: (312) 876-7700
Facsimile: (312) 993-9767
kenneth.schuler@lw.com
marc.zubick@lw.com

Dated: August 29, 2012

Richard K. Herrmann #405
MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
Wilmington, Delaware 19801
(302) 888-6800
rherrmann@morrisjames.com

*Attorneys for Defendant*
*Roxane Laboratories, Inc.*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................... ii

I. NATURE AND STAGE OF THE PROCEEDINGS ........................................................ 1

II. SUMMARY OF ARGUMENT ........................................................................................ 1

III. SUMMARY OF FACTS .................................................................................................. 2

IV. ARGUMENT .................................................................................................................... 2

    A. The Standards for a Rule 12(b)(1) Motion ............................................................. 2

    B. Only the Assignee of the Patent Has Standing to Sue for Patent Infringement ............................................................................................................ 2

    C. Abbott's Assignment of the Patents-in-Suit to AbbVie Deprives this Court of Jurisdiction ........................................................................... 3

V. CONCLUSION ................................................................................................................. 5

## TABLE OF AUTHORITIES

**Page(s)**

*Abraxis Bioscience, Inc. v. Navinta LLC*,
  625 F.3d 1359 (Fed. Cir. 2010) ................................................................................................4

*Alvarez v. Smith*,
  130 S. Ct. 576 (2009) ................................................................................................................2

*CNA v. United States*,
  535 F.3d 132 (3d Cir. 2008) ......................................................................................................2

*Jim Arnold Corp. v. Hydrotech System, Inc.*,
  109 F.3d 1567 (Fed. Cir. 1997) .................................................................................................3

*Lans v. Digital Equipment Corp.*,
  252 F.3d 1320 (Fed. Cir. 2001) .................................................................................................3

*Lewis v. Continental Bank Corp.*,
  494 U.S. 472 (1990) ............................................................................................................2, 4

*Richmond, Fredericksburg & Potomac Railroad Co. v. United States*,
  945 F.2d 765 (4th Cir. 1991) (on a Rule 12(b)(1) .....................................................................3

*Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*,
  130 S. Ct. 1431, 28 U.S.C. § 2072 (b) ......................................................................................5

*Sicom System Ltd. v. Agilent Technologies, Inc.*,
  427 F.3d 971 (Fed. Cir. 2005) ...................................................................................................3

*Sizova v. National Institute of Standards & Technology*,
  282 F.3d 1320 (10th Cir. 2002) .................................................................................................5

*Spencer v. Kemna*,
  523 U.S. 1 (1998) ......................................................................................................................3

*Wright v. Early Warning System Inc.*,
  No. 10-988-GMS, 2012 U.S. Dist. LEXIS 21719 (D. Del. Feb. 22, 2012) ...............................3

*Qimonda AG v. LSI Corp.*,
  --- F. Supp. 2d ---, No. 08-cv-735, 2012 WL 777494 (E.D. Va. Mar. 7, 2012) ....................4, 5

## STATUTES AND RULES

35 U.S.C. § 100(d) ...........................................................................................................................3

35 U.S.C. § 281 ................................................................................................................................3

Fed. R. Civ. P. 12(b)(1) ................................................................................................................. 2

Fed. R. Civ. P. 25(c) .......................................................................................................................5

## I.  NATURE AND STAGE OF THE PROCEEDINGS

On April 10, 2012, plaintiff Abbott Laboratories ("Abbott") filed a complaint for alleged patent infringement, based on the submission of an Abbreviated New Drug Application ("ANDA") by defendant Roxane Laboratories, Inc. ("Roxane").  The Complaint alleged infringement of U.S. Patent No. 7,148,359 (the "'359 patent"), U.S. Patent No. 7,364,752 (the "'752 patent"), and U.S. Patent No. 5,648,497 (the "'497 patent").  (D.I. 1.)  On April 11, 2012, Abbott filed an Amended Complaint, adding claims for alleged infringement of U.S. Patent No. 6,037,157 (the "'157 patent") and U.S. Patent No. 6,703,403 (the "'403 patent) (collectively, the "patents-in-suit").  (D.I. 8.)

Roxane answered the Amended Complaint, denying infringement and asserting counterclaims.  (D.I. 15.)  Roxane also moved to transfer this action to the Southern District of Ohio, where certain of the patents-in-suit (the '359 and '752 patents) were the subject of an earlier-filed declaratory judgment action.  (D.I. 13.)  The motion to transfer is pending.

## II.  SUMMARY OF ARGUMENT

Only the party that holds legal title to a patent may maintain an action for infringement. Without legal title, there is no standing to sue.  Thus, if the plaintiff relinquishes its rights to the patent during the pendency of the litigation, the dispute becomes moot and there remains no justiciable case or controversy to support Article III jurisdiction.

On August 1, 2012, Abbott assigned the patents-in-suit to AbbVie Inc. ("AbbVie"). AbbVie is not a party to this lawsuit and Abbott did not file any motion to add AbbVie as a party when the transfer was made or in the month since.  Therefore, there remains no justiciable dispute between Abbott and Roxane.  The Amended Complaint must be dismissed for lack of jurisdiction.

### III.   SUMMARY OF FACTS

In October 2011, before filing the present lawsuit, Abbott announced plans that it would split into two companies and transfer its pharmaceutical business to a "new pharmaceutical company" known as AbbVie.[1]  Nevertheless, Abbott brought suit in its own name against Roxane, in April 2012.  (D.I. 1; D.I. 8.)

As Abbott stated in its August 28, 2012 letter to Judge Burke, "on August 1, 2012, the patents involved in this case, pertaining to various aspects of the drug Norvir®, were assigned to AbbVie as part of this reorganization."  (Exhibit A hereto.)  Accordingly, Abbott has admitted to Roxane and the Court that non-party AbbVie now holds legal title to the patents-in-suit.

### IV.   ARGUMENT

#### A.   The Standards for a Rule 12(b)(1) Motion

On a Rule 12(b)(1) motion to dismiss that raises a factual challenge to jurisdiction, the Court may consider evidence outside of the pleadings.  *CNA v. United States*, 535 F.3d 132, 145 (3d Cir. 2008).  The plaintiff's jurisdictional averments are not controlling.  *Id.*  Rather, Abbott, as the party invoking jurisdiction, bears the burden to prove that jurisdiction exists.  *Id.*

#### B.   Only the Assignee of the Patent Has Standing to Sue for Patent Infringement

Under Article III of the Constitution, jurisdiction in federal court only exists when there is a live case or controversy between the parties.  *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1990) ("Under Article III of the Constitution, federal courts may adjudicate only actual, ongoing cases or controversies.").  This requirement is present throughout the entire course of litigation.  *Id.*; *Alvarez v. Smith*, 130 S. Ct. 576, 580 (2009) ("An 'actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.'" (internal quotation

---

[1] *See* 8/28/12 Letter from M. Graham to Judge Burke, Exhibit A hereto, at 1.

omitted)). "'The parties must continue to have a "personal stake in the outcome" of the lawsuit.' This means that, *throughout the litigation*, the plaintiff 'must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision.'" *Spencer v. Kemna*, 523 U.S. 1, 7 (1998) (emphasis added) (citations omitted).

Under the patent statutes, only the patentee may maintain an action for infringement in federal court. 35 U.S.C. § 281. Upon assignment of all substantial rights in a patent, the assignee is deemed the effective patentee for purposes of constitutional standing. *Sicom Sys. Ltd. v. Agilent Techs., Inc.*, 427 F.3d 971, 976 (Fed. Cir. 2005); *see also* 35 U.S.C. § 100(d). "[A]ssignments pass title to the patentee's rights, with all the accompanying rights of ownership, from the patentee to the assignee." *Jim Arnold Corp. v. Hydrotech Sys., Inc.*, 109 F.3d 1567, 1577 (Fed. Cir. 1997). Following assignment, the assignor no longer has standing to maintain its lawsuit. *Lans v. Digital Equip. Corp.*, 252 F.3d 1320, 1328 (Fed. Cir. 2001); *Jim Arnold*, 109 F.3d at 1577.

### C. Abbott's Assignment of the Patents-in-Suit to AbbVie Deprives this Court of Jurisdiction

Abbott has admitted that it has assigned the patents-in-suit to a third party, AbbVie. At the moment of the assignment, Abbott lost sufficient rights in the patents-in-suit to maintain a justiciable case or controversy against Roxane.[2] *Lans*, 252 F.3d at 1328; *Jim Arnold*, 109 F.3d

---

[2] Because Abbott bears the burden to establish jurisdiction, it is sufficient for Roxane to describe the basis for its challenge. *See Wright v. Early Warning Sys. Inc.*, No. 10-988-GMS, 2012 U.S. Dist. LEXIS 21719, at *5 (D. Del. Feb. 22, 2012). The Amended Complaint must be dismissed unless Abbott has persuasive evidence to the contrary that can establish jurisdiction. *See id.* at *10; *Richmond, Fredericksburg & Potomac RR. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991) (on a Rule 12(b)(1) motion "[t]he district court should apply the standard applicable to a motion for summary judgment, under which the nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists").

at 1577.  The corporate relationship between Abbott and AbbVie is "irrelevant" for purposes of jurisdiction.  *Abraxis Bioscience, Inc. v. Navinta LLC*, 625 F.3d 1359, 1366 (Fed. Cir. 2010).

The facts of this case are indistinguishable from a case decided earlier this year by Chief Judge James Spencer of the Eastern District of Virginia.  In *Qimonda AG v. LSI Corp.*, plaintiff Qimonda brought an action for patent infringement against defendant LSI.  --- F. Supp. 2d ---, No. 08-cv-735, 2012 WL 777494 (E.D. Va. Mar. 7, 2012).  The parties did not dispute that Qimonda held title to the patents-in-suit at the time the lawsuit was filed.  *Id.* at *4.  However, while the litigation was pending, Qimonda entered insolvency proceedings and title to the patents-in-suit was transferred to the insolvency administrator, Jaffé.  *Id.*

Because the "case-or-controversy requirement subsists through all stages of federal judicial proceedings," *Lewis*, 494 U.S. at 477, the *Qimonda* court examined whether the plaintiff held sufficient rights to the patents-in-suit at the time of the jurisdictional challenge.  2012 WL 777494, at *6.  It concluded that jurisdiction was lacking because Jaffé, not Qimonda, held title to the patents-in-suit:

> As previously established, the Court is obliged to evaluate jurisdiction at the time of the challenge.  At that point in time, Qimonda no longer had standing to sue, and this case became moot. … While this may seem to be a harsh result that elevates form over substance, it is not the place of this Court to find jurisdiction when it may seem more convenient and practical to do so.  Following this course would in fact allow the rules governing the manner and form of litigation, at the party's behest, to override substantive constitutional limits on federal judicial power.

*Id.* at *9.

Like Qimonda, Abbott appears to have relinquished title to the patents-in-suit during the course of the litigation.  As of the time of this jurisdictional challenge, there remains no

-4-

justiciable dispute between Abbott and Roxane.[3]  Accordingly, the Amended Complaint should be dismissed.[4]

## V.     CONCLUSION

Roxane respectfully requests that the Court grant its motion and dismiss the Amended Complaint for lack of jurisdiction.

---

[3] Abbott's suggestion of substituting AbbVie, (*see* Ex. A at 1), does not cure the jurisdictional defect. Substitution under FED. R. CIV. P. 25(c) is strictly a procedural device that cannot confer substantive rights or create jurisdiction. *See Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 130 S.Ct. 1431, 1442 (2010) (if Fed. R. Civ. P. "alters 'the rules of decision by which [the] court will adjudicate [those] rights,' it is not [valid]") (citation omitted); 28 U.S.C. § 2072(b). Since jurisdiction must be judged at the time that the challenge is raised, any attempted substitution after such challenge is simply too late and cannot restore jurisdiction after it is lost. *Qimonda*, 2012 WL 777494, at *9. The absence of jurisdiction prevents the court from granting substitution, much less entertaining the dispute, as the court in *Qimonda* recognized. *Id.*

[4] To the extent that Abbott argues that it somehow retained sufficient rights in the patents-in-suit to maintain standing, Roxane requests expedited discovery to resolve any relevant factual issues related to jurisdiction. Jurisdictional discovery is appropriate when the pertinent jurisdictional facts are in dispute. *See Sizova v. Nat'l Inst. of Standards & Tech.*, 282 F.3d 1320, 1326 (10th Cir. 2002).

Dated: August 29, 2012

| | |
|---|---|
| | *s/ Richard K. Hermann* |
| | Richard K. Herrmann #405 |
| OF COUNSEL: | MORRIS JAMES LLP |
| | 500 Delaware Avenue, Suite 1500 |
| Kenneth G. Schuler | Wilmington, Delaware 19801 |
| Marc N. Zubick | (302) 888-6800 |
| LATHAM & WATKINS LLP | rherrmann@morrisjames.com |
| 233 South Wacker Drive, Suite 5800 | |
| Chicago, Illinois 60606 | *Attorneys for Defendant* |
| Telephone: (312) 876-7700 | *Roxane Laboratories, Inc.* |
| Facsimile: (312) 993-9767 | |
| kenneth.schuler@lw.com | |
| marc.zubick@lw.com | |

Roger J. Chin
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, California 94111
Telephone: (415) 391-0600
Facsimile: (415) 395-8095
roger.chin@lw.com

Jennifer Koh
LATHAM & WATKINS LLP
12636 High Bluff Drive, Suite 400
San Diego, California 92130
Telephone: (858) 523-5400
Facsimile: (858) 523-5450
jennifer.koh@lw.com

Gregory K. Sobolski
LATHAM & WATKINS LLP
555 Eleventh Street, N.W., Suite 1000
Washington, D.C. 20004
Telephone: (202) 637-2200
Facsimile: (202) 637-2201
gregory.sobolski@lw.com

# EXHIBIT A

# MORRIS, NICHOLS, ARSHT & TUNNELL LLP

1201 NORTH MARKET STREET
P.O. BOX 1347
WILMINGTON, DELAWARE 19899-1347

———

(302) 658-9200
(302) 658-3989 FAX

**MARY B. GRAHAM**
(302) 351-9199
mgraham@mnat.com

August 28, 2012

**BY ELECTRONIC FILING**

The Honorable Christopher J. Burke
J. Caleb Boggs Federal Building
844 N. King Street
Unit 28, Room 6100
Wilmington, DE 19801-3555

        Re:   *Abbott Laboratories v. Roxane Laboratories, Inc.*
               Civil Action No. 12-457 (RGA) (CJB)

Dear Judge Burke:

        Abbott Laboratories writes to apprise the Court of a change in circumstances that is relevant to the resolution of Defendant Roxane Laboratories, Inc.'s Motion to Transfer Action to Southern District of Ohio (D.I. 13). As publicly announced in October 2011, Abbott is undergoing a major reorganization of its worldwide business operations whereby it is separating into two publicly traded companies, one in research-based pharmaceuticals and the other in diversified medical products. (*See* Ex. A.) AbbVie Inc., which is a Delaware corporation and a wholly-owned subsidiary of Abbott, is the new research-based pharmaceutical company, and will include Abbott's current portfolio of proprietary pharmaceuticals and biologics. (The diversified medical products company, which will retain the Abbott name, will consist of Abbott's existing diversified medical products portfolio.) When the separation is completed later this year, AbbVie will be a separate, stand-alone company and will carry forward what is currently Abbott's research-based pharmaceutical business. To further that separation, on August 1, 2012, the patents involved in this case, pertaining to various aspects of the drug Norvir®, were assigned to AbbVie as part of this reorganization. Given this change in patent ownership, AbbVie is unquestionably the proper plaintiff and Abbott will be working with Roxane on an appropriate stipulation to substitute AbbVie for Abbott as plaintiff in the case.

        Under Third Circuit law, a plaintiff's choice of forum is entitled to "paramount importance" in the transfer analysis under 28 U.S.C. § 1404. *See Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir 1970). Where the Plaintiff is a Delaware corporation, that fact "adds to the weight given its choice to sue in Delaware." *InvestPic, LLC v. SAS Inst., Inc.*, CIV.A. 10-1028-RGA, 2012 WL 1753665 at *2 (D. Del. May 15, 2012). *See also Intellectual Ventures I LLC v. Altera Corp.*, 842 F. Supp. 2d 744, 754 (D. Del. 2012) (Delaware corporation's

The Honorable Christopher J. Burke
August 28, 2012
Page 2

"preference to litigate its dispute in Delaware is entitled to substantial, indeed 'paramount,' weight."), *mandamus denied*, Misc. 121, 2012 WL 2951522 (Fed. Cir. July 20, 2012). Accordingly, the fact that the proper plaintiff in this action is now a Delaware corporation adds to the weight given to Delaware in the transfer analysis.

                Respectfully,

                */s/ Mary B. Graham*

                Mary B. Graham (#2256)

MBG/dam
Enclosure
cc:    Richard K. Herrmann, Esq. (by e-filing & e-mail, w/encl.)
        Kenneth G. Schuler, Esq. (by e-mail, w/encl.)
        Barbara R. Rudolph, Esq. (by e-mail, w/encl.)
6294867

# EXHIBIT A



Print this page  |  Back to Web Page

## Press Release

### Abbott to Separate into Two Leading Companies in Diversified Medical Products and Research-Based Pharmaceuticals

- Two publicly traded companies will offer shareholders distinct opportunities given unique investment identities, business profiles and attributes
- Builds on a decade of strategic and operational advancements

October 19, 2011

Abbott Park, Illinois (NYSE: ABT) — Today Abbott announced that it plans to separate into two publicly traded companies, one in diversified medical products and the other in research-based pharmaceuticals. The diversified medical products company will consist of Abbott's existing diversified medical products portfolio, including its branded generic pharmaceutical, devices, diagnostic and nutritional businesses, and will retain the Abbott name. The research-based pharmaceutical company will include Abbott's current portfolio of proprietary pharmaceuticals and biologics and will be named later. Both companies will be global leaders in their respective industries.

"Today's news is a significant event for Abbott, and reflects another dynamic change in our company's 123-year history, strengthening our outlook for strong and sustainable growth and shareholder returns," said Miles D. White, chairman and chief executive officer, Abbott.

Abbott's proprietary pharmaceutical business has delivered market-leading performance with a sustainable mix of products and built a strong pipeline of proprietary medicines through internal discovery, in-licensing and collaboration efforts. Abbott also has leadership positions in its diversified businesses, including established pharmaceuticals, nutritionals, diagnostics, and vascular devices, where the company is now the global leader in interventional cardiology.

### Creating Two Dynamic Health Care Companies

The research-based pharmaceutical company has nearly $18 billion in annual revenue today and will have a sustainable portfolio of market-leading brands, including Humira, Lupron, Synagis, Kaletra, Creon and Synthroid. An attractive pipeline of innovative R&D assets – in important specialty therapeutic areas such as Hepatitis C, immunology, chronic kidney disease, women's health, oncology and neuroscience – will help drive future growth.

The diversified medical products company has approximately $22 billion in annual revenue today and a durable mix of products balanced across four major businesses. It will continue to target double-digit ongoing earnings-per-share growth, with opportunities for geographic expansion, particularly in high-growth emerging markets. The company will have an extensive, broad-based pipeline of new products and technologies as well as opportunities for significant margin expansion.

Mr. White will remain chairman and CEO of Abbott, the diversified medical products company. Richard A. Gonzalez, currently executive vice president, Global Pharmaceuticals, will become chairman and CEO of the research-based pharmaceutical company. Mr. Gonzalez is a more than 30-year Abbott veteran and was previously president and chief operating officer of Abbott.

### Profiles of the Two Companies

The two companies have evolved into distinct investment and business opportunities:

> The research-based pharmaceutical company will focus on select specialty products with breakthrough innovation that serve patient needs in some of the most critical medical areas, such as immunology, Multiple Sclerosis, chronic kidney disease, Hepatitis C, women's health and oncology. This company will continue to generate the majority of its revenue from developed markets. The company's sustainable portfolio and advancing pipeline, including established biologics expertise, have the potential to deliver accelerating revenue growth in the coming years.

http://www.abbott.com/news-media/press-releases/2011-oct19-2.htm

> The diversified medical products company will be one of the largest and fastest growing investment opportunities in medical products with strong sales and ongoing earnings-per-share growth and a large, broad mix of products addressing many essential areas of health care. It will generate nearly 40 percent of its sales in high-growth emerging markets, with further expansion expected in the coming years.

"Abbott will be one of the largest and fastest-growing global diversified medical products companies, with a compelling portfolio of durable growth businesses in medical technology, branded generic pharmaceuticals and nutritionals," said Mr. White. "We will continue to grow our product lines, market share and global presence, especially in emerging markets."

"The research-based pharmaceutical company will be a leader in its industry with a strong and sustainable portfolio of specialty medicines and a promising pipeline of future products," said Mr. Gonzalez. "This business has been delivering market-leading performance and is well positioned for future success."

Following are brief profiles of the two companies as their businesses exist today:

### The Research-Based Pharmaceutical Company

> **Annual Sales:** Nearly $18 Billion (based on 2011 estimates)
>
> **Portfolio:** Numerous leading medicines, including: Humira, Lupron, Synagis, Zemplar, Kaletra, Creon, Duodopa, Synthroid, Androgel and others.
>
> **Pipeline:** Advancing pipeline of promising new specialty medicines and formulations, including more than 20 new compounds or indications in Phase 2 or 3 development across such disease states as immunology, chronic kidney disease, Hepatitis C, women's health, oncology, and neuroscience, including Multiple Sclerosis and Parkinson's and Alzheimer's diseases.

### The Diversified Medical Products Company (Abbott)

> **Annual Sales:** Approximately $22 Billion (based on 2011 estimates)
>
> **Portfolio:** Market-leading positions in established pharmaceuticals (branded generics outside the U.S.), adult and pediatric nutritionals, core laboratory diagnostics, point of care and molecular diagnostics, and medical devices, including vascular devices, diabetes care and vision care. Abbott will have an extensive, broad-based pipeline of new technologies and products.
>
> **Global and Emerging Markets Presence:** Products in more than 130 countries with nearly 40 percent of sales in emerging markets today; Abbott is the leading pharmaceutical company in India and has a significant and growing presence in many other emerging markets.

### Transaction Details

The transaction is intended to take the form of a tax-free distribution to Abbott shareholders of a new publicly traded stock for the new pharmaceutical company. The expected stock distribution ratio will be determined at a future date.

It is expected that the two companies will each pay a dividend that, when combined, will equal the current Abbott dividend at the time of separation.

This announcement will not impact Abbott's ongoing earnings-per-share guidance for 2011. The transaction is expected to be completed by the end of next year, but is subject to final approval by the Abbott board of directors, receipt of a favorable ruling from the Internal Revenue Service on the tax-free nature of the transaction, and the effectiveness of a Form 10 registration statement that will be filed with the Securities and Exchange Commission that will include information about the distribution and related matters. Abbott expects to incur one-time charges related to the transaction during the periods preceding the separation, to be quantified at a later date.

### Abbott Conference Call

Abbott will discuss the transaction on its earnings conference call today at 8 a.m. Central time; 9 a.m. Eastern time. The live Web cast will be accessible through Abbott's Investor Relations Web site at www.abbottinvestor.com.

### About Abbott

Abbott (NYSE: ABT) is a global, broad-based health care company devoted to the discovery, development, manufacture and marketing of pharmaceuticals and medical products, including nutritionals, devices and diagnostics. The company employs nearly 90,000 people and markets its products in more than 130 countries.

**— Private Securities Litigation Reform Act of 1995 — A Caution Concerning Forward-Looking Statements**

Some statements in this news release may be forward-looking statements for purposes of the Private Securities Litigation Reform Act of 1995, including the planned separation of the research-based pharmaceutical company from the diversified medical products company and the expected financial results of the two companies after the separation. Abbott cautions that these forward-looking statements are subject to risks and uncertainties that may cause actual results to differ materially from those indicated in the forward-looking statements, and there is no assurance as to the timing of the planned separation or whether it will be completed. Economic, competitive, governmental, technological and other factors that may affect Abbott's operations are discussed in Item 1A, "Risk Factors," to our Annual Report on Securities and Exchange Commission Form 10-K for the year ended Dec. 31, 2010, and in the interim reports filed on Form 10-Q for subsequent quarterly periods, and are incorporated by reference. Abbott undertakes no obligation to release publicly any revisions to forward-looking statements as a result of subsequent events or developments.

Media:
Melissa Brotz   (847) 935-3456
Scott Stoffel   (847) 936-9502

Financial:
Larry Peepo   (847) 935-6722
Tina Ventura   (847) 935-9390
Elizabeth Shea   (847) 935-2211

top of page

**Home | Select a Country | Site Map | Contact Us | Privacy Policy | Terms of Use**

Copyright © 2006, 2012 Abbott Laboratories. Abbott Park, Illinois, U.S.A.

Unless otherwise specified, all product names appearing in this Internet site are trademarks owned by or licensed to Abbott Laboratories, its subsidiaries or affiliates. No use of any Abbott trademark, trade name, or trade dress in this site may be made without the prior written authorization of Abbott Laboratories, except to identify the product or services of the company.